United States District Court
Southern District of Texas

**ENTERED**

April 10, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| PANKAJ KANDA | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:26-cv-158 |
| | § | |
| DAVID COLE *et al.* | § | |

## ORDER

Before the Court is Petitioner Pankaj Kanda's Petition for Writ of Habeas Corpus (Dkt. No. 1). After a careful review of the parties' briefing and applicable law, Petitioner's Writ of Habeas Corpus (Dkt. No. 1) is **DENIED**.

## I.   BACKGROUND

Petitioner, a citizen of India, entered the United States in 2022 (Dkt. No. 1 at 7). Upon his entry, ICE detained him and charged him as removable under 8 U.S.C. § 1182(a)(6)(A)(i) (Dkt. Nos. 5 at 2; 5-2 at 1). Respondents placed him in removal proceedings, and an immigration judge ordered his release pending payment of bond (Dkt. Nos. 6 at 3; 5 at 2). On August 5, 2022, he was released awaiting the outcome of his removal proceedings (Dkt. Nos. 6 at 3; 5-3 at 1).

On January 7, 2026, ICE re-apprehended Petitioner at a border patrol checkpoint (Dkt. Nos. 1 at 8; 5 at 2). His removal proceedings remain pending, and he is alleged to be in ICE's custody at the Rio Grande Processing Center in Laredo, Texas (Dkt. Nos. 1 at 7; 5 at 2). During his detention, Petitioner contends he was denied a bond hearing before an immigration judge based on Respondents' grounds for detention (Dkt. No. 1 at 8).

Petitioner filed this petition asserting his continued detention is unlawful[1] (Dkt. No. 1 at 14–20). He seeks his immediate release or an individualized custody hearing (Dkt. No. 1 at 20). The Court ordered Respondents to file a response (Dkt. No. 3), and Respondents moved for summary judgment (Dkt. No. 5). Instead of filing a reply,[2] Petitioner moved for summary judgment (Dkt. No. 6). The matter is now ripe for the Court to decide.

## II.   LEGAL STANDARD

### A.  28 U.S.C. § 2241

Pursuant to 28 U.S.C. § 2241, a district court may grant a writ of habeas corpus to a petitioner in federal custody in violation of the Constitution or federal law. Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001) (citations omitted), *superseded by statute on other grounds*, Real ID Act of 2005, H.R. 418, *as recognized in Nasrallah v. Barr*, 590 U.S. 573 (2020). Accordingly, challenges to immigration-related detention are within a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also*

---

[1] Petitioner notes the ongoing litigation in the Central District of California (Dkt. No. 1 at 4). *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987, at *2 (C.D. Cal. Dec. 18, 2025) (defining class); *id.* at *29 (granting class certification). However, he does not assert he is a member of the class. Other district courts within this district have concluded that the orders are not binding. *E.g.*, *Jandres-Ordonez v. Bondi*, No. 6:25-CV-084-H, 2026 WL 274493, at *4–6 (N.D. Tex. Jan. 23, 2026). Since Petitioner fails to assert this claim, the Court does not consider it in deciding the petition.

[2] When the Court ordered Respondents to respond to the Petition, it afforded Petitioner the opportunity to file a reply within three days of service of the response (Dkt. No. 3 at 2). However, it appears Petitioner used the deadline to respond to an opposed motion this Court typically affords in civil cases. J. Garcia Marmolejo Civ. Ct. P. 6(A)(4). Although the Court maintains broad discretion to strike untimely motions, the Court considers Petitioner's motion for summary judgment (Dkt. No. 6). *Harrison v. Tekoa Charter Sch., Inc.*, No. CV H-16-2037, 2017 WL 3671301, at *2 (S.D. Tex. Aug. 2, 2017) (citing *Edwards v. Cass Cty.*, 919 F.2d 273, 276 (5th Cir. 1990)).

2

*Demore v. Kim*, 538 U.S. 510, 517 (2003). A court need not hold a hearing if the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989).

### B.  Federal Rule of Civil Procedure 56

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) (citations omitted). Federal Rule of Civil Procedure 56 provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III.  DISCUSSION

### A.  Due Process Clause

The Court is aware of a split among district judges in the Fifth Circuit following *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. 2026), as to whether the Due Process Clause affords a Petitioner detained under 8 U.S.C. § 1225(b)(2) relief. Without clear binding guidance, and until the Fifth Circuit decides this issue, the Undersigned must make her own determination. Since Petitioner's claim raises both procedural and substantive due process, the Court addresses both (Dkt. No. 1 at 14–15). The Court finds Petitioner's due process claim fails.

Substantive due process only protects "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Dep't of State*

3

*v. Munoz*, 602 U.S. 899 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). The Supreme Court's "longstanding view" is that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore,* 538 U.S. at 526. Of course, "'[i]t is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). However, the "nature of that protection may vary depending upon status and circumstance." *Zadvydas*, 533 U.S. at 694 (first citing *Landon v. Plasencia*, 459 U.S. 21, 32–34 (1982); and then citing *Johnson v. Eisentrager*, 339 U.S. 763, 770, (1950)). Such rights exist "within the bounds set by rule and statute, as 'the through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens.'" *A.E., v. Powell*, No. 7:26-CV-337-EGL-NAD, 2026 WL 782294, at *6 (N.D. Ala. Mar. 19, 2026) (quoting *Munoz*, 602 U.S. at 911–12).

Petitioner's reliance on *Zadvydas* to support his due process claim is misplaced (Dkt. No. 1 at 14–15). The *Zadvydas* Court clearly distinguished post-removal proceedings from detentions pending a determination of removability. 533 U.S. at 697; *see also Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024) (noting for purposes of an alien's detention, the Supreme Court "opted for a bright-line rule," specifically "the government can detain an alien for as long as deportation proceedings are still pending."). When confronted with the Ninth Circuit's imposition of a time constraint on mandatory detention under § 1225(b), the Supreme Court declined to read any such limitation. *Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018). The Fifth Circuit also recently cautioned

4

that *Zadvydas* "has no direct application to aliens who are detained and being given due process during removal proceedings." *Buenrostro-Mendez*, 166 F.4th at 508. Since "detention during deportation proceedings" is "a constitutionally valid aspect of the deportation process," Petitioner's substantive due process allegations falls short. *Demore*, 538 U.S. at 523; *see also Powell*, 2026 WL 782294, at *6 ("Aliens unlawfully present in the United States have no fundamental right to move freely about the country" (citation omitted)).

Concerning procedural due process, aliens without admission have only those rights that Congress has afforded by statute. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020). Unlike post-removal proceedings, § 1225(b)(2) provides "for detention for a specified period of time," namely, during an alien's removal proceedings. *Jennings*, 583 U.S. at 299. The specified time is unaltered even when the alien has resided outside of detention and within the United States during the pendency of his removal proceedings. *See Higareda-Cano v. Noem*, No. 1:25-CV-225-H, 2026 WL 274495, at *12 (N.D. Tex. Jan. 30, 2026) (citation modified) (first quoting *Thuraissigiam*, 591 U.S. at 139; then citing 8 U.S.C. 1182(d)(5)(A); and then citing 8 C.F.R. § 1.2). As Petitioner's immigration proceedings remain pending, his due process rights are those afforded under § 1225(b). *See Buenrostro-Mendez*, 166 F.4th at 508; *see also Powell*, 2026 WL 782294, at *6.

Petitioner requests that the Court utilize the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976) (Dkt. No. 6 at 12). But *Mathews* is not the sole tool for resolving procedural due process issues. *Dusenbery v. United States*, 534 U.S. 161, 168 (2002) ("[W]e have never viewed *Mathews* as announcing an all-embracing test for

deciding due process claims."). In the immigration context, the Supreme Court has repeatedly declined to use the test. *Demore*, 538 U.S. at 528; *Reno*, 507 U.S. at 306–08; *Zadvydas*, 533 U.S. at 701*; see also Banyee*, 115 F.4th at 933. While the *Plasencia* court utilized *Mathews* balancing, there they applied the test to a lawful permanent resident. 459 U.S. at 32. The Court reasoned that "once an alien gains *admission* to our country and begins to develop the ties that go with *permanent residence* his constitutional status changes accordingly." *Id.* (emphasis added); *see Buenrostro-Mendez*, 166 F.4th at 502 (finding a petitioner remains an applicant for admission under § 1225(b)(2) "pending the resolution of removal proceedings" and therefore is "seeking admission").

Nor does Petitioner's previous release from detention or the absence of an individualized assessment change the analysis.[3] *Penafiel Clavijo, v. Thompson*, No. 4:26-CV-01454, 2026 WL 923310, at *3 (S.D. Tex. Mar. 26, 2026) ("A hearing as to dangerousness or flight risk is thus irrelevant to the *lawfulness* of his detention under the statute"); *Singh, v. Swearingen*, No. 2:26-CV-00167-JRO-MG, 2026 WL 847715, at *10 (S.D. Ind. Mar. 27, 2026) (same); *Demir, v. Noem*, No. 2:26-CV-00086-JRO-MKK, 2026 WL 706485, at *8 (S.D. Ind. Mar. 13, 2026) (denying petitioner relief despite previously being released). As relevant here, "when the Government deals with deportable aliens, the Due Process Clause does not require [Congress] to employ the least burdensome means to accomplish its goal." *Demore*, 538 U.S. at 528. In fact, the Supreme Court has affirmed that immigration authorities can deny bond to detainees "even

---

[3] In his response, Petitioner contends that individuals released on parole have a continued liberty interest that creates an implicit promise that re-detention is only proper for a violation of a condition of release (Dkt. No. 6 at 8–9). However, the authorities cited are not in the immigration context and the Court finds it inapplicable to the instant issues. *E.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 483 (1972) (state prisoner).

without any finding of flight risk" or dangerousness. *Id.* at 524 (citing *Carlson v. Landon*, 342 U.S. 524 (1952)).

As the Fifth Amendment does not require a bond hearing for aliens detained under § 1226(c)'s mandatory detention, "'then the same is true' for § 1225 detainees during theirs." *Hernandez Rivera*, v. *Warden, Baker Correctional Institution*, No. 3:25-CV-1609-WWB-LLL, 2026 WL 904688, at *3 (M.D. Fla. Apr. 2, 2026) (citation omitted); *see also Tran* v. *Dep't of Homeland Sec.*, No. 3:26-CV-00711-LS, 2026 WL 927426, at *2 (W.D. Tex. Apr. 6, 2026); *Black v. Decker*, 103 F.4th 133, 142 (2d Cir. 2024). The Court finds, like others within this district, that Petitioner's due process claim must fail. *Espina Gutierrez v. Bondi*, No. 4:26-CV-00708, 2026 WL 445499, at *2 (S.D. Tex. Feb. 17, 2026); *Gonzalez Jimenez v. Bradford*, 4:25-CV-5853, slip op. at 4–5 (S.D. Tex. Feb. 10, 2026); *Mouzgui v. Noem*, No. 4.26-CV-00996, 2026 WL 607993, at *1 (S.D. Tex. Mar. 4, 2026).

## B. Fourth Amendment

Petitioner argues his detention was without probable cause, therefore violating the Fourth Amendment (Dkt. No. 1 at 15). Petitioner goes no further in explaining this allegation, nor does he provide authority that release is a remedy. Generally, "[h]abeas has traditionally been a means to secure *release* from unlawful detention." *Thuraissigiam*, 591 U.S. at 107. For a Fourth Amendment violation, the suppression of evidence is the typical remedy. *United States v. Mendez*, 885 F.3d 899, 909 (5th Cir. 2018) (citation omitted). But "[t]he 'body' or identity of a defendant in a . . . civil proceeding is never itself suppressible . . . even if it is conceded that an unlawful arrest, search, or interrogation occurred." *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 104 S. Ct. 3479, 82 L. Ed. 2d 778 (1984); *see also Rodrigues De Oliveira v. Joyce*, No. 2:25-CV-00291-LEW, 2025

7

WL 1826118, at *5 (D. Me. July 2, 2025) (noting the argument "that an illegal arrest automatically results in an illegal detention is misguided"). At any rate, cases considering Fourth Amendment violations in the removal context occur only after a "petitioner has exhausted their administrative remedies through Immigration Court and the Board of Immigration Appeals." *Lopez Ruiz v. Samuel Olson*, No. 4:26-CV-51-RGJ, 2026 WL 483478, at *12 (W.D. Ky. Feb. 20, 2026) (collecting cases); *Solis-de Patino v. Pitts*, 823 F. Supp. 2d 457, 464 (W.D. Tex. 2011); *see also De La Paz v. Coy*, 786 F.3d 367, 376 (5th Cir. 2015) (detailing the DHS's regulatory scheme to address Fourth Amendment violations). Since § 1225(b)(2) provides Respondent's lawful authority to detain Petitioner, his Fourth Amendment claim cannot succeed. *Ordonez v. Frink*, No. 4:25-CV-06386, 2026 WL 143153, at *1 (S.D. Tex. Jan. 20, 2026) (finding a habeas petitioner's Fourth Amendment claim foreclosed when it relied on the Government lacking authority to detain him).

### C. Immigration Nationality Act

Lastly, Petitioner argues that his detention is under 8 U.S.C. § 1226(a), and as such, he is entitled to a bond redetermination hearing before an immigration court (Dkt. No. 1 at 16). However, this argument is foreclosed by the Fifth Circuit's recent decision. *Buenrostro-Mendez*, 166 F.4th at 498. There, the Fifth Circuit held that persons classified as "applicant for admissions" under 8 U.S.C. § 1225(a)(1) are subject to mandatory detention under § 1225(b)(2). *Id.* Just as the petitioners in *Buenrostro-Mendez*, Petitioner's detention is governed by § 1225(b)(2), which states nothing "whatsoever about bond hearings." *Id.* at 502 (citing *Jennings*, 583 U.S. at 502). As such, Petitioner's final claim fails.

### IV.   CONCLUSION

For the reasons above, Respondents' Motion for Summary Judgment (Dkt. No. 5) is **GRANTED**. Petitioner's Writ of Habeas Corpus and Motion for Summary Judgment (Dkt. Nos. 1, 6) are **DENIED**. This case is **DISMISSED WITH PREJUDICE**.

If the United States Supreme Court enters a decision that is contrary to the decision in *Buenrostro-Mendez*, the Court **GRANTS** Petitioner leave to initiate a new habeas petition.

The Clerk of Court is **DIRECTED** to **TERMINATE** this civil action. The Court will enter Final Judgment under separate cover. *See* Fed. R. Civ. P. 58(a).

It is so **ORDERED**.

**SIGNED** April 10, 2026.

Marina Garcia Marmolejo
United States District Judge